IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RUBATEX INTERNATIONAL, LLC, | ) | Case No. 10-62642 |
| | ) | |
| DEBTOR. | ) | |

**AFFIDAVIT OF DOMINIK MENAKKER, MANAGER OF RUBATEX INTERNATIONAL, LLC IN SUPPORT OF FIRST DAY MOTIONS AND APPLICATIONS**

I, Dominik Menakker, in support of First Day Motions (defined below), after first being duly sworn, declare that if called to testify in this case, I would and could to the best of my knowledge testify as follows:

1. I am the manager of Rubatex International, LLC. (the "Debtor" or "Rubatex"). I am the sole shareholder in Virginia Rubber Investment Corp.[1] and it is the sole member of the Debtor.

2. In my capacity as manager of the Debtor, I am familiar with the Debtor's day-to-day operations, business affairs, and books and records. I have served as the manager of the Debtor since 2008 Dec 17th

3. To minimize the adverse effects of filing for chapter 11 protection and to enhance the Debtor's prospects of success in this chapter 11 case, the Debtor is filing a number of motions and applications on September 21, 2010, requesting various types of "first day" relief (collectively, the "First Day Motions"). I am familiar with the contents of each First Day Motion (including any exhibits and other attachments thereto), and I believe that the relief sought in each

---

[1] The Virginia State Corporation Commission automatically terminated Virginia Rubber Investment Corp. on January 4, 2010. I have started the process of reinstating Virginia Rubber Investment Corp. and it will be reinstated in due course.

First Day Motion: (i) is necessary to enable the Debtor to prosecute a chapter 11 case in the most efficient manner possible for the benefit of the creditors and other parties in interest; (ii) will enhance the Debtor's prospects for achieving the successful prosecution of its chapter 11 case; and (iii) best serves the Debtor's estate and the interests of the Debtor's creditors.

4. I submit this declaration in support of the First Day Motions. Except as otherwise indicated, all statements set forth in this declaration are based upon: (i) my personal knowledge; (ii) information supplied to me by other members of the Debtor's management or its professionals; (iii) my review of relevant documents; or (iv) my opinion based upon my experience and knowledge of the Debtor's operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this declaration on behalf of the Debtor.

5. Part I of this declaration describes the Debtor's business, its capital structure, and the circumstances surrounding the commencement of this chapter 11 case. Part II sets forth the relevant facts in support of each First Day Motion.

## PART I

### OVERVIEW OF THE DEBTORS' BUSINESS OPERATIONS

A. **Summary of the Debtor's History and Business**

6. The Debtor owns and, until June 21, 2010, operated a cellular rubber manufacturing plant located at 906 Adams Street, Bedford, Virginia. Prior to 2008 Dec 17th, SEDO Chemicals Neoprene GmbH owned and operated the plant. Before 2004, the plant had

been owned by RBX Industries, Inc., but was sold in 2004 in connection with RBX Industries, Inc.'s second chapter 11 bankruptcy case.

7. Prior to its closing, the Debtor employed about 50 individuals. On June 21, 2010, the Debtor closed the plant and the City of Bedford caused an attachment to be issued. In connection with the attachment, the Sheriff's Department located the gates to the plant. A hearing on the attachment had been scheduled for September 20, 2010.

**B.     Equity and Significant Indebtedness**

8. I own 100% of Virginia Rubber Investment Corp., and it owns 100% of the membership interests in the Debtor. I also have interests in other companies that hold claims against the Debtor.

Because the Debtor has not been able to access its records since June 21, 2010, the Debtor has not made a determination whether its assets exceed its liabilities.

**C.     Events Leading to Bankruptcy**

9. Prior to the plant shutdown, the Debtor experienced a liquidity crisis as a result of, among other things, damages and inefficiencies caused by nonconforming product supplied by a vendor. As a result, the Debtor could not collect sufficient receivables to timely service its obligations and sustain its operations. On September 15, 2010, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code to allow it to, among other things, sell its nonperforming assets, restructure its business operations, and create a repayment plan for its obligations.

## PART II

## FIRST DAY MOTIONS[2]

In order to minimize the adverse effects associated with commencing this chapter 11 case, the Debtor has requested various forms of relief in the First Day Motions filed concurrently with this affidavit. For each such motion, the facts stated herein are true and correct to the best of my knowledge, information and belief, and provide the justification for the following two conclusions: the relief sought therein is an immediate necessity (1) in order to limit the disruption associated with the Debtors' entry into bankruptcy and prevent irreparable harm to the Debtor and (2) is essential if the Debtor is to maximize the value of its estate.

A.  **Motion for Entry of an Order Setting Hearings on "First Day" Motions**

10. The Debtor's ability to operate will be irreparably harmed unless expedited hearings are held on the First Day Motions. The First Day Motions seek the relief necessary to enable the Debtor to prosecute this case until such further notice as the Court may require can be given, if any. The First Day Motions deal with primarily administrative matters necessary to run and efficient case and do not impact any entities substantive rights. Other First Day Motions also deal with matters that must be immediately addressed to prevent the Debtor from suffering irreparable harm. For example, the Debtor cannot currently access the records necessary for it to prepare its schedules and statements. Unless the Debtor prosecutes a motion to extend time to file such schedules and statements, its case will be dismissed. Because of the nature of the relief requested in the First Day Motions, I understand that courts routinely grant

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the respective First Day Motion.

4

such motions. If called to testify, I would testify that hearings need to be held on the First Day Motions to prevent the Debtor from suffering irreparable harm.

The relief requested in the First Day Motions is the product of the Debtor's exercise of sound business judgment. It is my understanding that the relief requested by the Debtor is consistent with the relief routinely granted in other chapter 11 bankruptcy cases.

### B. The Debtor's Retention of Professionals

11. The Debtor will file an application in due course to retain bankruptcy counsel and the Debtor anticipates filing one or more application(s) to employ other professionals in this case. The Debtor will be irreparably harmed if it is not able to retain counsel as of the Petition Date within the first 21 days after the Petition Date. For example, the Debtor has already required counsel to prosecute a motion to compel the Bedford Sheriff to remove the locks from the Debtor's gates so the Debtor could show its equipment to a prospective purchaser from Europe on September 17, 2010. If the Debtor is not authorized to retain counsel, then it will be irreparably harmed if, prior to the expiration of 21 days from the Petition Date, the Debtor needs counsel to prosecute other motions to prevent the Debtor from suffering irreparable harm.

Additionally, the Debtor needs to have certain utility services restored so it can access its records to assist its counsel complete the required bankruptcy schedules. The Debtor is unable to complete and file all of its schedules because it does not have access to its records. The Debtor cannot complete its bankruptcy schedules without access to the facilities and the utilities necessary to access the records of the company. The schedules must be filed within the first 14 days after the Petition Date. If the Debtor is not allowed to retain counsel until after 21 days after the Petition Date, its case will be summarily and automatically dismissed pursuant to the

5

deficiency Order this Court will enter because the Debtor will not have counsel to assist it in obtaining the utility services necessary to access its computers and prepare its bankruptcy schedules.

The Debtor will also have to attend an initial debtor interview with the United States Trustee during the first 21 days of the case, and the Debtor will require legal counsel at that meeting.

12. The Debtor has selected Magee Goldstein Lasky & Sayers, P.C. ("MGLS") as its bankruptcy counsel because of its bankruptcy experience and reputation. Additionally, MGLS represented the Debtor prepetition and, as a result, has valuable institutional knowledge of the Debtor's business and operations. It would be an undue hardship on the Debtor to require it to retain and pay another firm to acquire the knowledge that MGLS already has. The Debtor carefully analyzed its options and exercised its business judgment in selecting MGLS as its bankruptcy counsel.

13. The Debtor provided MGLS with a retainer. Immediately prior to the filing of the Debtor's petition, MGLS paid all amounts owed to it and the balance of the unearned retainer is being held by MGLS to secure the payment of its fees and expenses in this case.

14. I believe the retention of MGLS to perform the services set forth in the application to employ MGLS is in the best interest of the Debtor's estate and creditors.

      **C.**      **Debtor's Motion for an Order Establishing Procedures for Interim Compensation Pursuant to Section 331 of the Bankruptcy Code**

      15.      The Debtor filed an application to retain Magee Goldstein Lasky & Sayers, P.C. and the Debtor may file one or more application(s) to employ other professionals (each a "Professional," and collectively, the "Professionals"). In addition, I am informed that an official committee of unsecured creditors (the "Committee") may be appointed, and that the Committee also may seek to retain various professionals (the "Committee Professionals").

      16.      I am informed that entry of an interim compensation order in substantially the form attached to the motion will streamline the professional compensation process and enable the Court and all other parties to more effectively monitor the professional fees incurred in this case. Further, it will avoid forcing the Professionals to finance the cases while awaiting final approval of their fees and expenses. The requested relief will also help the Debtor monitor the professional fees and expenses incurred and assist the Debtor in the management of its cash. Accordingly, I believe that such relief is in the best interests of the Debtor's estate.

      **D.**      **Motion of the Debtors tor Entry of Interim and Final Orders Under Section 366 of the Bankruptcy Code (A) Prohibiting Utility Providers From Refusing Service, (B) Deeming Utilities Adequately Assured of Future Performance, and (C) Establishing Procedures for Determining Adequate Assurance of Payment**

      17.      The Debtor has relationships with the Utility Providers for the provision of the Utility Services. Prior to closing, I believe the average monthly payments exceeded $25,000.00 per month. At this point, however, the Debtor is only seeking the utility services necessary to allow the Debtor to operate its office. Specifically, the Debtor needs electricity,

7

water, and internet to operate is office facility. Therefore, the Debtor estimates that its average monthly payments to the Utility Providers will aggregate under $1,000.00.

18. The Debtor, by the utility motion, seeks the entry of interim and final orders: (a) prohibiting the Utility Providers from altering, refusing or discontinuing services; (b) deeming Utility Providers adequately assured of future performance; and (c) establishing procedures for determining adequate assurance of future payment.

19. On the Petition Date, the Debtor was not current with its Utility Providers. The Debtor, however, does not require the amount of utility services previously provided to the Debtor and is prepared to provide the Utility Providers with deposits sufficient to cover the one month's anticipated usage, which is the maximum exposure the Utility Providers will face. To the extent the Debtor would seek to operate the production facilities again, the Debtor would negotiate additional adequate assurance of payment with the Utility Providers.

20. The Debtor proposes to adequately assure the Utility Providers of payment by timely paying for all post-petition Utility Services, paying a deposit equal to one month's anticipate usage, and setting up a procedure whereby the Utility Providers may terminate service to the Debtor if it fails to cure any payment default within 10 days written notice to the Debtor and the Debtor's counsel. The procedures adequately assure the Utility Providers of payment.

21. In addition, the Debtor seeks to establish reasonable procedures, as described more fully in the Utility Motion, by which a Utility Provider may request additional adequate assurance of future payment, in the event that such Utility Provider believes that its

adequate assurance provided by the Debtor does not provide it with satisfactory adequate assurance.

22. The Debtor cannot operate without continued Utility Services. If any of the Utility Providers alter, refuse or discontinue service, even for a brief period, the Debtor's restructuring efforts will be severely disrupted. In contrast, the Utility Providers will not be prejudiced by the continuation of their services and will be paid all postpetition utility charges. It is therefore critical that Utility Services continue uninterrupted.

E. **Motion for Entry of an Order Limiting Notice and Establishing Procedures for Case Management and Scheduling of Hearings**

23. I believe the number of creditors in this case will exceed 100 entities. The Debtor's counsel has explained that notice of many of the proceedings in the case will have to be served on all parties in interest absent an order of the Court limiting the entities required to be served. Many of the entities that the Debtor is currently required provide notice of proceedings in this case have no interest in receiving such notices. Providing notice to such entities will result in the Debtor expending a substantial amount of money in mailing and handling costs without generating a commensurate benefit for the Debtor or its bankruptcy estate. If the service of pleadings is limited to those entities that desire to stay abreast of the proceedings in this case, then the Debtor will be able to reduce its administrative costs which will increase the distribution to the unsecured creditors. Limiting service of notices as provided in the proposed order will provide due and sufficient notice to parties in interest that are actually interested in the case while minimizing administrative expenses to the Debtor.

24. The motion seeks to establish a procedure by which the entities that desire to receive notice of the proceedings may elect to receive such notices. To be entitled to receive

9

notice of all such matters contemplated by the motion, a creditor or party in interest need only (i) file a notice of appearance and request for service of papers or (b) otherwise provide Debtor's counsel with a written request for notice of pleadings filed in this case.

25. Because the relief requested in the motion appropriately balances the need for notice with the need to judiciously administer the assets of the estate and avoid incurring unnecessary administrative costs, it should be granted.

### E.    Motion to Extend Time to File Schedules and Statements

26. Because the Debtor could not access its records prepetition, its counsel could not fully prepare the required schedules, statements, and other documents due in the first 14 days after the Petition Date. Since the case has been filed, I have been able to access the Debtor's facilities; however, the utilities needed to access the Debtor's records still have not been restored. Therefore, I still have not been able to obtain the records needed for the Debtor's counsel to prepare the required documents. Once the utilities are restored and the records are obtained, I understand the Debtor's counsel will need sufficient time to accurately prepare the required documents.

27. I understand the creditors' meeting will be scheduled for November 5, 2010. Therefore, no party in interest will be harmed if the Debtor is given until October 15, 2010, to prepare and file its schedules, statements, and other documents. For that reason, the time should be extended.

For all of the foregoing reasons, I respectfully request that this Court grant the relief requested in each of the First Day Motions filed contemporaneously with this Affidavit.

Further the affiant says not.
Dominik Menakker

_____
Manager of Rubatex International, LLC

COMMONWEALTH OF VIRGINIA)
CITY OF ROANOKE          )

I, Valorie Spence, a Notary Public, do hereby certify that Dominik Menakker personally came and attested to the foregoing before me this 21st day of September, 2010.

/s/ Valorie S. Spence
Notary Public

My commission expires:      8/31/2011
My registration number is:  7132646



U:\A CLIENTS\Rubatex International, LLC 2644\Pleadings\Affidavit of Menakker.DOC

11